IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Applicant,<br><br>v.<br><br>HARVARD UNIVERSITY,<br><br>Respondent. | MBD NO. _______________ |

**MEMORANDUM IN SUPPORT OF**
**APPLICATION TO SHOW CAUSE WHY**
**ADMINISTRATIVE SUBPOENA SHOULD NOT BE ENFORCED**

This case is before the Court on the application of the Equal Employment Opportunity Commission ("EEOC" or "the Commission") for an order to show cause why an administrative subpoena should not be enforced. EEOC is currently investigating a charge of employment discrimination against Respondent, Harvard University ("Respondent"), under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). A subpoena enforcement proceeding is a summary proceeding with judicial review limited only to whether the underlying charge is valid and the materials sought are relevant to the charge. Importantly, the purpose of a subpoena enforcement action is not to weigh the merits of an underlying charge. This makes sense: at this stage the EEOC is simply seeking information from Respondent in order to complete its investigation and determine whether any violation of Title VII occurred. A subpoena enforcement action is a necessary tool the EEOC routinely uses when a respondent fails to fully comply with its obligations to participate in an EEOC investigation. Here, despite the EEOC's good faith attempts to engage Respondent throughout the investigative process and be responsive

to concerns Respondent has raised, Respondent continues to withhold relevant information. Given this refusal to comply after a year and five months of trying to obtain compliance through other means, it is now necessary for the EEOC to file this enforcement action.

The charge under investigation, Charge No. 830-2025-00004 ("Charge"), alleges systemic discrimination on the basis of race and sex. The Charge alleges that Respondent announced on its own website a comprehensive plan to discriminate against white, Asian, male, non-black, non-Hispanic, non-Native American, and straight employees. The Charge further alleges that this comprehensive plan has affected a class of aggrieved individuals who may be entitled to remedies under Title VII. The Houston District Office of the EEOC is investigating the Charge.

After several attempts to obtain Respondent's voluntary compliance with EEOC's requests for information failed, EEOC issued Subpoena No. HU-A26-002 seeking documents required for its investigation. The Subpoena requests several distinct categories of documents that relate to Respondent's alleged systemic race and sex discrimination. *See* Subpoena, EXHIBIT 1. The subpoena seeks documents from the relevant period of January 1, 2018, through the present, precisely reflecting the relevant time period set forth in the Charge.

To date, Respondent has failed to fully comply with EEOC's subpoena, and that refusal has delayed and hampered the investigation of this Charge, thereby preventing EEOC from fulfilling its enforcement and investigatory duties. The Commission therefore applies to this Court for an Order to Show Cause Why the Subpoena Should Not be Enforced.

## FACTUAL BACKGROUND

On April 25, 2025, Chair Andrea R. Lucas filed a Commissioner's Charge[1] alleging systemic race and sex discrimination by Respondent, since at least 2018 and continuing thereafter.

---

[1] Title VII authorizes EEOC commissioners to file charges. *See* 42 U.S.C. § 2000e-5(b) ((referring to charges "filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission"). Title VII requires

The Charge alleges that Respondent engaged in a pattern or practice of discrimination of disparate treatment against white, Asian, male, or straight employees, applicants, and training program participants in hiring, promotion, compensation, and separation decisions, internship programs, and mentoring, leadership development, and other career development programs.

For over a year, the Commission has attempted to investigate the Charge pursuant to its mandatory obligation to investigate under 42 U.S.C. §2000e-5(a). During the investigation, the EEOC received Respondent's position statement and among other things, served Requests for Information ("RFI"). In response, Respondent produced some documents, withheld others, and asserted objections.[2] Respondent has consistently failed to meet deadlines and has instead unilaterally opted for a rolling production of documents that remains grossly deficient and subject to Respondent's improper objections. The deadline for Harvard to produce documents in response to the Subpoena was September 16, 2026. On that date, Harvard made only a partial production and has continued to supplement its production piecemeal despite not receiving any extension from the EEOC or any agreement to accept a rolling production. There is no foreseeable end date to Harvard's piecemeal late submissions of documents which were due no later than September 16, 2026. This does not constitute compliance with the EEOC's investigative requests. *See Concepts NREC, LLC v. Qiu*, No. 5:20-CV-00133-GWC-KJD, 2024 WL 2137762, at *11 (D. Vt. Mar. 22, 2024), *report and recommendation adopted*, No. 5:20-CV-133, 2024 WL 2506407 (D. Vt. May 24, 2024) (assertion that compliance with a subpoena remained "ongoing" was inadequate to fend

---

that Commissioner's Charges be filed under oath and be in writing. *EEOC v. Shell Oil Co.*, 466 U.S. 54, 67 (1984). Although the Charge here is styled as "Andrea Lucas v. Harvard University," the Commission investigation phase is not an "adversary proceeding." *Id.* at 68.

[2] On February 12, 2026, pursuant to multiple conferences between Respondent and the EEOC, the EEOC agreed to provisionally narrow the scope of its requests for information to certain employee groups and certain schools within Harvard University. This narrowed scope was explicitly conditioned on Respondent providing complete responsive information to the EEOC's requests, and the EEOC further retained its right to request additional information related to any matters within the scope of the Charge. Respondent failed to provide complete responsive information under that provisional scope, which is no longer offered by the EEOC.

off claim of noncompliance). After Respondent failed to provide the required evidence, the EEOC issued a subpoena seeking the following: (1) all documents related to the establishment of the Office for Faculty Development and Diversity; (2) all documents related to the establishment of the Presidential Task Force on Inclusion and Belonging; (3) all agendas and minutes of meetings held by the Presidential Task Force on Inclusion and Belonging during the relevant time period; (4) all documents relating to any hiring committee guidance during the relevant time period; (5) all job descriptions, performance plans, and performance reviews for Sherri Ann Charleston, Chief Diversity Officer, Teresa Malonzo, Director of Affirmative Action and Diversity Analytics/Senior Operations Lead, and Alexis J. Stokes, Associate Chief of Diversity and Inclusion Officer; (6) all documents with performance metrics for those positions; (7) all cover letters, CVs, and resumes for all applicants to any faculty position during the relevant time; (8) all interview notes for same; (9) an Excel spreadsheet of relevant data for same, including name, sex, race, position applied for, and decision on the application, date, and name and title of decisionmaker; (10) discrimination complaints based on race where the complainant identifies as "white," race where the complainant identifies as "Asian," sex where the complainant is male, and/or sex where the complainant is straight; (11) all witness statements, investigation reports, outcomes, and communications related to same; and (12) documents identifying the person(s) most knowledgeable regarding faculty diversification efforts for each school and for each year within the relevant period.

Respondent petitioned the EEOC to revoke or modify the subpoena. The Commission considered the arguments presented by Respondent but rejected those arguments in a twenty-five-page decision issued on August 31, 2026. The 21-day period to comply with the subpoena has expired. Respondent has not complied.

## ARGUMENT

### I. Legal Standard

"Title VII of the Civil Rights Act of 1964 permits the Equal Employment Opportunity Commission (EEOC) to issue a subpoena to obtain evidence from an employer that is relevant to a pending investigation." *McLane Co. v. EEOC,* 581 U.S. 72, 75 (2017). Relevance, in this context, is broader than civil discovery and is understood as allowing EEOC "access to virtually any material that might cast light on the allegations against the employer." *EEOC v. Shell Oil Co.,* 466 U.S. 54, 68-69 (1984). Through Title VII, "Congress intended [the EEOC] to have broad access to information relevant to the inquiries it is mandated to conduct." *EEOC v. Ford Motor Credit Co.,* 26 F.3d 44, 47 (6th Cir. 1994). The Commission's administrative subpoenas will be enforced where (1) Congress has granted authority to investigate; (2) the procedural requirements have been met; and (3) the evidence sought is relevant and material to the investigation. *Univ. of Pa. v. EEOC,* 493 U.S. 182, 191 (1990); *see also U.S. v. Comley,* 890 F.2d 539, 541 (1st Cir. 1989); *EEOC v. McLane Co.,* 857 F.3d 813, 816-17 (9th Cir. 2017), *rev'd on other grounds*, 581 U.S. 72 (2017).

EEOC subpoena-enforcement proceedings are summary in nature and subject to limited judicial review. *EEOC v. Mar. Autowash, Inc.,* 820 F.3d 662, 665 (4th Cir. 2016); *EEOC v. Konica Minolta Bus. Solutions U.S.A., Inc.,* 639 F.3d 366, 368 (7th Cir. 2011); *EEOC v. Fed. Express Corp.,* 558 F.3d 842, 848 (9th Cir. 2009); *see also U.S. v. Sturm, Ruger & Co., Inc.,* 84 F.3d 1, 5 (1st Cir. 1996) ("Subpoena enforcement proceedings are designed to be summary in nature, and an agency's investigations should not be bogged down by premature challenges to its regulatory jurisdiction.") (internal citations omitted). "A district court is not to use an enforcement proceeding as an opportunity to test the strength of the underlying complaint." *McLane,* 581 U.S. at 76. Instead, as the Supreme Court instructs, a district court should only "satisfy itself that the charge

is valid and that the material requested is relevant to the charge." *Id.* Once those two minimal requirements are established, an employer must comply with the subpoena unless it can demonstrate that "the subpoena is too indefinite, has been issued for an illegitimate purpose, or is unduly burdensome." *Id.* "Given the importance of allowing an agency to investigate potential violations, the law heavily favors enforcement." *EEOC v. Northwestern Mutual*, No. 25-MC-0053-BHL, 2026 WL 2150377, at *3 (E.D. Wis. July 27, 2026) (where EEOC's subpoena sought "21 categories of information and records related to the charge and to the company's Position Statement").

**II. The Charge and Subpoena are valid, and the material requested is relevant to the Charge.**

A. <u>The Charge is valid.</u>

"Whether a specific charge is valid is determined from the face of the charge, not from extrinsic evidence." *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 650 (7th Cir. 2002) (*citing EEOC v. K–Mart Corp.*, 694 F.2d 1055, 1065 (6th Cir.1982)). The Charge here meets the minimal basis requirements set forth in the regulations governing charges of discrimination. "Any member of the Commission may file a charge with the Commission. Such charge shall be in writing and signed and shall be verified." 29 C.F.R. § 1601.11(a). Here, Chair Lucas, a "member of the Commission," filed a Charge against Respondent that was "in writing and signed and … verified." *Id.* Further, any charge is minimally "sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. §1601.12(b); *see also Shell Oil*, 466 U.S. at 67-74.

Here, Chair Lucas set forth detailed allegations in a six-page Charge that, among other things, "Harvard may have [engaged in disparate treatment discrimination on the bases of race and

sex] in an effort to achieve, in Harvard's own words, 'demographic diversification of the faculty' within a 'framework for faculty hiring that recognize[d Harvard's] goals when authorizing faculty searches, conducting the searches themselves, and reviewing search committee recommendations.' This focus on 'issues of recruitment, development, and promotion' was in pursuit of 'progress in diversifying' Harvard faculty." EXHIBIT 2. The Charge further attached graphs – published by Respondent – that show a consistent increase in every demographic group except for white males, dating back to 2013. The Charge alleges that these trends are evidence of discrimination and that, combined with Respondent's stated goal of "diversifying" the faculty, these trends are a result of intentional disparate treatment discrimination. The Charge suggests that Respondent's very decision to publish these numbers betrays its intent to discriminate against white males *See* EXHIBIT 2, at 3 (describing Respondent as "touting" these numbers).

The Charge further alleges that Respondent may have operationalized this discrimination through several programs, including but not limited to the "Diversity and Inclusion Fellow Program," multiple programs at Respondent's Medical School and affiliated hospitals, and programs at Harvard College that were expressly directed at employees of "underrepresented and diverse backgrounds" to the exclusion of all others. *Id.*, at 4-5.

These detailed allegations are "a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. §1601.12(b). The Charge is valid.

B. <u>The subpoena is a valid exercise of the agency's authority.</u>

Congress has authorized, and indeed mandated, that EEOC investigate charges of discrimination alleging that Title VII has been violated. 42 U.S.C. § 2000e-5(b). Congress has conferred on the Commission broad powers of access to records of those entities against whom

charges have been filed, 42 U.S.C. § 2000e-8(a), including the authority to subpoena evidence in an investigation, 29 U.S.C. § 161 (incorporated into Title VII by 42 U.S.C. § 2000e-9). Here, EEOC is investigating the Charge's allegations that Respondent engaged in systemic race and sex discrimination in violation of Title VII. Such an investigation is within the agency's statutory authority. Thus, the subpoena is a valid exercise of the agency's authority and should be enforced. *See Sturm, Ruger & Co.,* 84 F.3d at 5-6 ("As long as the agency's assertion of authority is not obviously apocryphal, a procedurally sound subpoena must be enforced.") (*citing EEOC v. Kloster Cruise Ltd.,* 939 F.2d 920, 923 (11th Cir. 1991)).

C. The procedural requirements have been met as to the Subpoena.[3]

A valid charge has been filed with the Commission, and the subpoena contains all the information required by the Commission's regulations. *See* 29 C.F.R. § 1601.16(a) (elements of subpoena);[4] *see also Shell Oil Co.,* 466 U.S. at 67-74 (1984) (addressing requirements of a valid charge); 29 C.F.R. § 1601.12 (same). The subpoena therefore is properly issued pursuant to the regulations governing administrative subpoenas issued by the EEOC.

D. The evidence sought is relevant and material to the investigation.

The information sought by the subpoena is relevant to the issue of race and sex discrimination under investigation. Relevance in an EEOC investigation is broader than relevance under the Federal Rules of Civil Procedure or the Federal Rules of Evidence. Section 709(a) grants

---

[3] On June 18, 2026, Respondent timely submitted a petition to revoke or, alternatively, modify the subpoena pursuant to 29 C.F.R. § 1601.16(b). On August 31, 2026, the EEOC denied Respondent's petition.

[4] 29 C.F.R. § 1601.16(a) states, in relevant part:

> The subpoena shall state the name and address of its issuer, identify the person or evidence subpoenaed, the person to whom and the place, date and the time at which it is returnable or the nature of the evidence to be examined or copied, and the date and time when access is requested. A subpoena shall be returnable to a duly authorized investigator or other representative of the Commission.

the EEOC access to "any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a). "Since the enactment of Title VII, courts have generously construed the term 'relevant' and have afforded the Commission access to virtually any material that might cast light on the allegations against the employer." *Shell Oil Co.,* 466 U.S. at 68-69.

Here, undeniably, the requested information "might cast light on the allegations against the employer." *See id.* Request No. 1 seeks documents related to the establishment of the Office for Faculty Development and Diversity. This request is relevant because the Charge cites reports prepared by the Office for Faculty Development and Diversity. The purpose and establishment of this office is likely to give additional context to these reports, which appear to show trends that form a basis for the Charge's pattern or practice allegations. Request Nos. 2 and 3 seek documents related to the establishment of, and agendas and minutes of meetings held by, the Presidential Task Force on Inclusion and Belonging, a task force that appears to have a related function to the Office for Faculty Development and Diversity. Request No. 4 seeks documents related to any hiring committee guidance in place during the relevant period. This request is relevant because faculty hiring practices are one of two main subjects in the Charge. Request No. 5 seeks job descriptions, performance plans, and performance reviews for three diversity officials identified during the investigation thus far as highly likely to have information relevant to the allegations of the Charge, because these individuals are suspected to have implemented Respondent's race and sex based demographic goals and been evaluated on their progress towards achieving those goals. Request No. 6 seeks documents related to performance metrics applied to each of the positions held by the individuals identified in Request No. 5, in order to assess whether and how Respondent evaluated

these individuals on their progress towards achieving Respondent's race and sex based demographic goals.

Request Nos. 7 and 8 seek application materials and interview notes for faculty applicants during the relevant period, a paradigmatic request in an EEOC hiring discrimination investigation. Request No. 9 seeks a searchable Excel spreadsheet providing organized data regarding the applicants for whom Respondent produced application materials. This request is likewise typical and crucial to an investigation of this sort, as the requested data would illuminate whether applicants belong to any of the protected classes identified in the Charge and what the hiring outcome was for each applicant.

Request No. 10 seeks internal and external discrimination complaints by Respondent's faculty or faculty applicants made during the relevant time and based on the classifications in the Charge (*e.g.*, based on race where complainant identifies as "white" or "Asian," based on sex where the complainant identifies as male, or based on sex where the complainant identifies as straight). This question is clearly relevant to whether Respondent has engaged in a pattern or practice of hiring discrimination against these classes. Request No. 11 seeks additional documents related to Respondent's investigation of the complaints responsive to Request No. 10. Request No. 12 seeks the identities of person(s) most knowledgeable regarding faculty diversification efforts, a critical part of the Charge's allegations, for each school. This is relevant and necessary to identify appropriate individuals for interviews as part of EEOC's investigation.

E. Respondent's collateral attacks on the Charge and Subpoena fail.

Respondent sought to avoid compliance in its petition to the Commission to revoke or modify the subpoena by arguing, among other things, that the internal guidelines set forth in the EEOC Compliance Manual required a meet and confer process, that the EEOC waived some

portion of its subpoena requests through RFIs, and that the underlying charge is not supported by the evidence. Each of these arguments is meritless. First, the EEOC Compliance Manual is an internal guidance document which does not provide a defense under 29 C.F.R. §1601.16 by the plain language of that regulation or under any other legal authority; and in any event, as the Respondent conceded in the Petition, the EEOC had been engaged in many discussions with the Respondent about the scope of the investigation and the lack of the required production, for several months. These communications would qualify as a "meet and confer" if there were such a requirement. Second, it is well settled that arguments about the merits of the underlying charge are irrelevant to whether a subpoena should be enforced – the EEOC need not "take an employer at its word." *United Air Lines, Inc.*, 287 F.3d at 651; *Mar. Autowash, Inc.*, 820 F.3d at 667 (a district court considering the merits of the underlying charge in a subpoena enforcement action would be reversible error).

Similarly, Respondent's attacks on the timeliness of the Charge – because the Charge alleges conduct dating back to 2018 – are wrong. Respondent incorrectly argues that the EEOC lacks authority under Title VII to access relevant materials predating the Charge by more than 300 days, and refuses to provide materials from outside of 300 days from filing of the Charge. This argument conflates the 300-day period to file a charge with the relevant temporal scope of an investigation, which are two distinct concepts. It is well established that evidence from outside a liability period can be relevant. *See EEOC v. Randstad,* 685 F.3d 433, 442 (4th Cir. 2012) (concluding that a five-year scope of the subpoena was not an unreasonable exercise of the EEOC's discretion); *see also EEOC v. DO & CO Detroit, Inc.*, No. 24-MC-50408, 2024 WL 1955986, at *2 (E.D. Mich. May 3, 2024) (rejecting objection to subpoena requesting information about individuals who applied for employment over a multi-year period, because the EEOC "is permitted

to seek information for periods beyond that alleged in a charge, including after its filing"). At this stage, the EEOC is investigating to determine whether there is reasonable cause to believe any violation of Title VII occurred and the scope of any such violation. The evidence that precedes the Charge by more than 300 days is relevant to show intent and to establish whether a pattern or practice violation occurred. *See EEOC v. Mitsubishi Motor Mfg. of Am., Inc.*, 990 F. Supp. 1059, 1085 (C.D. Ill. 1998). The Charge itself alleges a continuing violation, and it is clear from the face of the Charge that the relevant temporal scope of the investigation must extend to at least 2018. Respondent's pattern of conduct since 2018 is relevant to the Charge's allegation that Respondent has engaged in systemic discrimination from then to the present. The court need not consider Respondent's arguments about the potential liability period, or the applicability of the continuing violation theory, as neither is germane to whether the information sought is relevant to the allegations in the charge.

Respondent makes no argument that the charge fails to allege discrimination occurring within the charge filing period. Such an argument would be meritless, as where there is a dispute as to the timeliness of the underlying charge, courts have ordered enforcement of EEOC's subpoenas. *See, e.g., EEOC v. Schwan's Home Serv.,* 644 F.3d 742, 746-47 (8th Cir. 2011) ("the appropriate time to address the timeliness issue is if and when an actual lawsuit is filed, not during the subpoena enforcement stage"). In *EEOC v. City of Norfolk Police Dep't,* 45 F.3d 80 (4th Cir. 1995), the court stated that a trial court should decline to enforce a subpoena only if the charge is untimely on its face, conceded to be untimely, or "the untimeliness of the charge is 'otherwise apparent.'" *Id.* at 83. Because the Commission presented a colorable argument that the charge in *Norfolk Police* was timely, the appellate court enforced the subpoena. *Id.* at 85; *accord EEOC v. Tempel Steel, Co.,* 814 F.2d 482, 485 (7th Cir. 1987) ("a timeliness defense may not be raised to

block enforcement of an EEOC subpoena" although "an exception might exist if the party under investigation were able to establish that there was clearly no factual or legal support for the agency's preliminary determination to investigate").

Here, EEOC has presented more than a colorable argument that the underlying Charge of discrimination is timely. The Charge itself states that the discrimination alleged continues to the present day. Because the Charge is timely and the temporal scope of the subpoena is proper, the subpoena should be enforced.

**III. Respondent Cannot Establish That Enforcement of the Subpoena is Unduly Burdensome.**

Respondent bears the burden of demonstrating that compliance with the subpoena would be unduly burdensome. *EEOC v. Children's Hosp. Med. Ctr. of N. Cal.,* 719 F.2d 1426, 1428 (9th Cir. 1983). This is a "difficult burden." *United Air Lines, Inc.,* 287 F.3d at 653. To meet this demanding standard, Respondent must show that the cost of compliance with the subpoena is "unduly burdensome in the light of the company's normal operating costs." *EEOC v. Maryland Cup Corp.,* 785 F.2d 471, 479 (4th Cir. 1986); *see also United Airlines,* 287 F.3d 643 at 653 ("Often we have phrased this 'difficult burden' as requiring a showing that 'compliance would threaten the normal operation of a respondent's business.'") (*quoting EEOC v. Bay Shipbuilding Corp.,* 668 F.2d 304, 313 (7th Cir. 1981)). Indeed, merely alleging that Respondent would need to obtain, organize, and produce responsive materials is insufficient. *See Konica Minolta Bus. Sols. U.S.A.*, 639 F.3d at 371; *EEOC v. Citicorp Diners Club*, 985 F.2d 1036, 1038 (10th Cir. 1993) (finding that the EEOC may compel an employer to compile information within its control to respond to a subpoena); *A'GACI, LLC*, 84 F. Supp. 3d at 552–53 (finding that ordering company to produce records for the duration of charging party's employment did not impose an undue burden where company alleged it received over 7,000 employment applications during that time);

*EEOC v. All. Residential Co.,* 866 F. Supp. 2d 636, 644 (W.D. Tex. 2011) (finding that requiring employer to manually review personnel files and compile data was not unduly burdensome, although it would require hundreds of hours of work). "Although '[w]hat is unduly burdensome depends on the particular facts of each case' . . . an important factor is the cost of production 'in the light of the company's normal operating costs.'" *Randstad*, 685 F.3d at 451–52 (internal citations and quotation marks omitted).

Employers responding to EEOC subpoenas have generally failed to meet this standard, even where — unlike in the administrative proceedings here — they provide specific *evidence* of hardship. For example, in *Maryland Cup,* the court held that it was not unduly burdensome to require the company to spend $75,000 (in 1985 dollars) to inspect photo identifications to identify the race of employees and to interview employees in order to determine the last-known addresses and telephone numbers of former employees. *Maryland Cup,* 785 F.2d at 479. Similarly, in *EEOC v. Alliance Residential Co.,* 866 F. Supp. 2d 636 (W.D. Tex. 2011), the court found that "manual review of personnel files does not rise to the level of an undue burden." In *EEOC v. Citicorp Diners Club, Inc.,* 985 F.2d 1036, 1040 (10th Cir. 1993), the court found that the employer's assertion that responding to the subpoena would "require two full-time employees working approximately six months" did not constitute an undue burden on a company that employed approximately 1,100 people.

A court will not excuse compliance with a subpoena for relevant information on the grounds of burdensomeness unless the company can establish that "compliance threatens to unduly disrupt or seriously hinder normal operations of a business." *Id.*; *see also NLRB v. Champagne Drywall, Inc.,* 502 F. Supp. 2d 179, 181 (D. Mass. 2007) (same). Such a showing requires evidence both of the cost of compliance and the company's "normal operating costs," and a finding that

"gathering the requested information would 'threaten' or 'seriously disrupt' [Respondent's] business operations." *Randstad,* 685 F.3d at 452; *see also EEOC v. Aaron Bros., Inc.,* 620 F. Supp. 2d 1102, 1108 (C.D. Cal. 2009) (respondent failed to meet its burden of showing that subpoena is overbroad and unduly burdensome where it failed to produce evidence of the size of its operations and capacity to handle costs of compliance).

Here, Respondent is a major leading university with growing "net assets" of $68.7 billion. Considering that the unduly burdensome analysis focuses on the size and operating costs of the respondent's business, this particular Respondent faces a daunting task of showing that compliance is unduly burdensome to its business. *See EEOC v. VF Jeanswear LP,* 769 Fed. Appx. 477, 478 (9th Cir. 2019) (where company employed approximately 2,500 employees, cost of over $10,000 to comply with subpoena was not unduly burdensome). Respondent has not provided the Commission with any evidence of costs or how compliance with the subpoena would impact its business operations. *See* Respondent's Petition to Revoke, attached to Decl. as EXHIBIT 3. Even if compliance requires Respondent to manually review personnel and applicant files, that is not a basis for revoking the subpoena. *See All. Residential,* 866 F. Supp. 2d at 645 ("The manual review of personnel files does not rise to the level of an undue burden."). Because the cost of compliance must be considered within the context of the Respondent's size, Respondent simply cannot establish that compliance with EEOC's subpoena would seriously disrupt Respondent's operations. *See EEOC v. A.E. Stanley Mfg. Co.,* 711 F.2d 780, 788 (7th Cir. 1983) (employer must put forth evidence that enforcement of the subpoena would threaten normal business operations to demonstrate that compliance would cause an undue burden). To date, Respondent has failed to provide any evidence to support that proposition. Its bald assertions are insufficient.

Respondent has contended that the Subpoena calls for information that would be burdensome to produce due to Respondent's decentralized hiring and promotion structure. This contention is likewise unavailing. The alleged lack of uniformity among and within Respondent's schools and offices in terms of record-keeping and hiring practices cannot establish a defense to the production of the requested information. When a request is made more burdensome by the employer's own organizational practices, an employer cannot use this as the basis for a conclusory claim that it would be burdensome to respond to legitimate investigative requests. *See United Air Lines, Inc.,* 287 F.3d at 653 ("Conclusory allegations of burdensomeness are insufficient"); *see also Konica Minolta Bus. Sols. U.S.A.*, 639 F.3d at 371. Absent any objective proof of undue burden, Respondent fails to show that compliance would "seriously disrupt its normal business operations." *Maryland Cup*, 785 F.2d at 477. Arguments about the scope of the subpoena – disconnected from any objective showing of hardship – do not carry Respondent's burden.

To the extent that Respondent may hinge a burdensomeness argument on the need to compile lists and summaries, such an argument would be unavailing. EEOC's subpoena power is "not limited to the production of documents already in existence. Rather, the enabling statute grants the EEOC broad authority to require the production of *any* evidence." *Maryland Cup,* 785 F.2d at 479 (although the information sought by subpoena may only have existed in the minds of the company's employees, the company was required to produce the information) (internal quotations omitted) (emphasis in original). Indeed, courts have required respondents to assemble lists, summaries and other data compilations in response to EEOC subpoenas. *See Citicorp Diners Club, Inc.,* 985 F.2d at 1039 ("EEOC may compel an employer to compile information within its control in order to respond to a subpoena"); *Motorola, Inc. v. McLain,* 484 F.2d 1339, 1346 (7th Cir. 1973) ("There is nothing unique about a requirement to compile and furnish lists, names,

addresses and telephone numbers."); *see also Champagne Drywall, Inc.,* 502 F. Supp. at 181 (where information sought, in its "raw data form," existed and was within respondent's control, court required respondent to "compile the data into the format as requested by the subpoenas.").

Further, "[t]here is a presumption in favor of requiring an employer's compliance with a subpoena when the Commission inquires into legitimate matters of public interest." *Konica Minolta Business Solutions,* 639 F.3d at 371. Race and sex discrimination are matters of public concern. Any inconvenience Respondent may suffer as a result of responding to the subpoena does not rise to the level of undue burden. As such, the subpoena should be enforced.

## IV. The Subpoena Does Not Constitute Retaliation Under the First Amendment.

Finally, Respondent's anticipated argument that the subpoena constitutes retaliation under the First Amendment (which was raised in the administrative proceedings) lacks merit. The Supreme Court held that the EEOC subpoena enforcement process does not, as a general matter, infringe or impose a chilling effect on the First Amendment rights of university respondents. *Univ. of Pa.*, 493 U.S. at 199-201 (rejecting the university's argument that the EEOC subpoena enforcement process infringed on its First Amendment rights of academic freedom and free speech). Respondent has offered no evidence of an improper purpose in the EEOC's investigation of the Charge. Respondent's own published graphs facially suggest that it pursued race- and sex-based hiring objectives for years. This evidence provides a reasonable basis for the EEOC to investigate whether Respondent's race- and sex-based goals violated the rights of employees or prospective employees under Title VII. Further, attached to this Application is a sworn declaration from the Houston District Director describing the basis for the subpoena and the need for the evidence in the investigation. EXHIBIT 4. The First Circuit has described such declarations of government officials as sufficient *prima facie* evidence (that which is sufficient on its own absent firm evidence of bad faith) of an investigation's proper purpose. *Comley*, 890 F.2d at 541. Because

Respondent cannot show any bad faith on the part of the EEOC officials involved in the investigation, and reliance on bare speculation cannot overcome this evidence and cannot plausibly show any First Amendment violation.

For all of the above reasons, Respondent fails to show that compliance with the subpoena would be unduly burdensome. The Court should enforce the subpoena.

## CONCLUSION

For the reasons stated above, the Court should enforce EEOC's subpoena. The subpoena seeks information relevant to a valid charge of discrimination, the investigation of which is within the EEOC's enforcement authority. Additionally, Respondent cannot establish that compliance with the subpoena would constitute an undue burden. The Commission therefore respectfully requests that the Court issue the accompanying proposed Order to Show Cause and, after providing Respondent an opportunity to be heard, enforce the subpoena.

Dated: September 29, 2026

Respectfully submitted,

**Christopher Lage**
Deputy General Counsel

*<u>/s/ Rudy Sustaita</u>*
**Rudy L. Sustaita (Tx Bar No. 19523560)**
Regional Attorney
rudy.sustaita@eeoc.gov | (346) 327-7691
1919 Smith St., 6th Floor
Houston, Texas 77002

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION