IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Applicant,<br><br>v.<br><br>HARVARD UNIVERSITY,<br><br>Respondent. | MBD NO. 1:26-mc-91522-AK |

**REPLY IN SUPPORT OF APPLICATION TO ENFORCE SUBPOENA**

EEOC is engaged in a legitimate employment discrimination investigation, initiated from a charge that contains primarily Harvard's own published data, and simply seeks information to conduct that investigation. Harvard has participated in the investigation and produced responsive information, including responsive information in partial compliance with the subpoena. This Court's permitted scope of inquiry in determining whether to enforce the subpoena remains narrow, ECF No. 1-1 at 5, and Harvard cannot carry its heavy burden to show improper purpose. Congress empowered the EEOC with broad subpoena power to enforce Title VII, and the Supreme Court has recognized a district court's limited role in a subpoena enforcement proceeding. *E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 63-64 (1984) (citing 42 U.S.C. §§2000e-8(a), 2000e-9). Similarly, Congress expressly granted EEOC Commissioners the power to file charges and to initiate investigations. 42 U.S.C. § 2000e-5(b); *Shell Oil*, 466 U.S. at 62-63 (holding that subpoena must be enforced in commissioner charge case). The Supreme Court has also held that academic freedom concerns do not provide a defense to subpoena enforcement by the EEOC where the information sought is relevant to a discrimination investigation. *Univ. of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 200-202 (1990). For these reasons and those below, the Court should reject Respondent's improper purpose arguments and enforce the subpoena without delay.[1]

## I. The Governing Standard Imposes a Heavy Burden on Respondent to Show an Improper Purpose.

"[Administrative subpoena] proceedings are designed to be summary in nature. As long as the investigation is within the agency's authority, the subpoena is not too indefinite, and the information sought is reasonably relevant, the district court must enforce an administrative

[1] EEOC focuses on the new improper purpose arguments raised in the Response. As to other arguments raised in the Response, those are insufficient to overcome the EEOC's case for enforcement set forth in the opening motion.

subpoena." *United States v. Comley*, 890 F.2d 539, 541 (1st Cir. 1989). Sworn declarations of government officials satisfy this summary standard. *Id*.

By contrast, a respondent objecting to enforcement on the grounds of improper purpose bears a heavy burden. *Comley*, 890 F.2d at 542-43. Respondent must show "firm evidence" of bad faith, which is above and beyond making "forceful allegations about the bad faith of certain [government] officials" or of generally "being pursued by the [government]." *Id.* The standard demands more than bare allegations of government misconduct or even allegations of being targeted by the government. *Id*. Even pointing to specific instances of alleged misconduct on the part of other government officials is not sufficient. *Id.* at 543. Rather, a respondent must provide evidence that the particular government officials involved in the investigation are compromised by bad faith. *Id.* A respondent must further demonstrate the lack of any proper purpose – even where an improper purpose may exist, the subpoena will still be enforced so long as a proper purpose also exists. *See F.T.C. v. Carter*, 636 F.2d 781, 789 (D.C. Cir. 1980).[2]

## II. Title VII Authorizes the Use of Commissioner's Charges, and the Use of That Procedure Here is Not Evidence of Improper Purpose.

EEOC has carried its prima facie burden to show a proper purpose for subpoena enforcement. The Commissioner's Charge is based on publicly available information (which Harvard published), that a Commissioner verified under oath and that satisfies the requirements for such a charge, and a legitimate discrimination investigation is underway.

Respondent states that the filing of a commissioner's charge is "highly irregular," insinuating it is suspect by virtue of its infrequency. ECF No. 26, at 6. But commissioner's charges

[2] A respondent lacking this "firm evidence" of bad faith generally cannot generate that evidence through discovery. Indeed, "[e]xcept in extraordinary circumstances ..., discovery is improper in a summary subpoena enforcement proceeding." *Comley*, 890 F.2d at 543 (citing *Carter*, 636 F.2d at 789). Requests for discovery are "not looked upon favorably." *Id*. Respondent's failure to show such extraordinary circumstances here is addressed in the Commission's Opposition to Respondent's Motion for Discovery and Evidentiary Hearing, filed herewith.

have been a longstanding feature of Title VII enforcement ever since Congress amended the statute in 1972 (*see Shell Oil*, 466 U.S. at 70-72); 42 U.S.C. § 2000e-5(b) (authorizing Commissioners to file charges). Commissioner's charges may be filed by any commissioner and must be signed under oath. 29 C.F.R. §1601.11(a). It is unsurprising that commissioner's charges make up a small portion of the Agency's overall inventory compared to the nearly 100,000 public charges the Commission receives each year. Respondent's argument that an investigative tool is suspect solely because it is relatively rare would undermine the very practice of issuing commissioner's charges, which Congress expressly authorized. The Supreme Court in *Shell Oil* did not find anything inherently suspect with commissioner's charges, and neither should this Court.

Commissioner's charges are a Congressionally authorized tool for investigating employment discrimination, so Harvard's complaint that the subpoena was issued as part of such an investigation fails to meet its heavy burden for demonstrating improper purpose. Respondent relies on bare temporal proximity between the issuance of the Charge and other agency actions, and fails to allege any misconduct on the Commissioner's part, or argue that Respondent's published statistics do not give cause to the EEOC to investigate.[3] At most, Harvard cites then-acting Chair Lucas making the unremarkable observation in an unrelated press release that as a part of the Executive Branch the EEOC is "accountable to the President's authority" and testifying in a hearing that, as an Executive Branch official, she seeks to exercise enforcement discretion consistent with the President's agenda. ECF No. 26 at 7-8. This is not "firm evidence" that then acting-Chair Lucas was directed to undertake any action related to Harvard, much less that any

[3] The charge cites tables published by Harvard describing changes in faculty demographics over a ten-year period, noting in particular the increase in women and faculty of color. ECF No. 1-3, at 2. An investigation may reveal that Harvard effectuated these changes in lawful ways – such as abandoning previous policies that discriminated against employees – or in unlawful ways, such as discriminating on the basis of race and sex. But there can be no doubt that the investigation itself is for a lawful, proper purpose.

such alleged order would be for an improper purpose and not a legitimate investigatory basis. Harvard's claims here are a far cry from the facts in *E.E.O.C. v. First Alabama Bank of Birmingham*, 440 F. Supp. 1381, 1385 (N.D. Ala. 1977), where the court found an improper purpose because an investigator issued subpoenas "based totally on personal considerations, unrelated to the charges under investigation." The court described a prior personal lawsuit involving the investigator and the respondent's counsel as "bitter[]" finding that the EEOC investigator harbored personal "hard feelings" against the counsel motivating the issuance of the subpoena. *Id.* at 1983. Moreover, EEOC categorically denies it disclosed the Charge to the press or directed anyone to do so. Harvard offers no evidence that none of its personnel or agents were the source of the Charge's disclosure.

And even assuming, *arguendo*, that Harvard could show that the issuance of the Commissioner's Charge was somehow connected to Harvard's alleged refusal to make changes in response to concerns by other federal agencies or by Harvard's conduct in separate federal investigations[4], that still would not render the subpoena here improper.[5] Given EEOC has shown there is a valid EEOC discrimination investigation underway, this is at most a mixed-motive action where the subpoena still will be enforced. *See Carter*, 636 F.2d at 789. Even if there is a mix of proper and improper purposes, "enforcement of the subpoena is called for so long as proper purposes exist as well." *Carter*, 636 F.2d at 789 (citing *Donaldson v. U.S.*, 400 U.S. 517, 534-35 (1971)). Even the cases to which Respondent cites acknowledge this rule. *See In re Administrative Subpoena,* 836 F. Supp. 3d 459, 471 (D.R.I. 2026) (noting that the subpoena would have survived

[4] Respondent's use of the catch-all term "government" highlights its failure to meet the "firm evidence" standard – Respondent cannot show EEOC misconduct, so it conflates the EEOC with other agencies with entirely different structures, procedures, and decisionmakers.

[5] EEOC in no way concedes that any agency collusion as described in Harvard's response happened, nor is EEOC required to ignore potential ongoing employment discrimination solely because an employer is subject to investigations by other agencies with unique jurisdictions or enforcement authority.

if there had been a "legitimate investigative purpose"). The agency categorically denies any improper purpose for the subpoena – but even if one existed, it must still be enforced so long as a proper purpose also exists (it does).

## III. Respondent Fails to Show Any Firm Evidence of Improper Purpose in Seeking Subpoena Enforcement.

Harvard has no evidence, much less "firm evidence," of improper purpose as to the subpoena's issuance here – a subpoena that Harvard has partially complied with. *See Comley*, 890 F.2d at 543; *SEC v. Howatt,* 525 F.2d 226, 229 (1st Cir. 1975). For all of Harvard's speculation, its papers are devoid of any allegations of misconduct by anyone in the Houston District Office – or anyone at the EEOC, for that matter – in deciding to issue the subpoena, and Harvard's objections – though sprawling – are, at bottom, about simply not wanting to turn over specific information.

The process for issuing and seeking judicial enforcement of an agency subpoena involves staff at multiple levels of the agency. *See* 29 C.F.R. §1601.16. First, the district director or his designee decides to issue the subpoena; then provided the respondent does not comply, the Commission votes on whether to enforce; then, the General Counsel or her designee (here, undersigned counsel) petitions the district court for enforcement. Respondent makes no argument of bad faith or bias on behalf of any of these officials or employees, critically undermining its improper purpose argument.[6] Harvard can point to no improper purpose in this process here.

Harvard's general allegations of misconduct are like those that were rejected by the First Circuit in *Comley* and by the D.C. Circuit in *Carter*. In *Comley*, the First Circuit rejected

[6] As explained in the Deputy Director's Declaration, filed this day, there is nothing unusual or nefarious about the Agency referring a particular matter to one district office or another. That is a routine practice, and the EEOC objects to any insinuation that the Boston district office is in any way less committed to the EEOC's mission than the Houston district office, or vice versa. The Court has no cause to doubt any of the EEOC's affidavits in this summary proceeding as such declarations are usually sufficient to justify enforcement. *Comley*, 890 F.2d at 541.

generalized allegations of being pursued by the government and of a vendetta on the part of NRC officials not actually investigating the matter. *Comley*, 890 F.2d at 543. Similarly, in *Carter*, the D.C. Circuit rejected a respondent's vague allegations of improper purpose because the purpose of the agency action "is to be measured against the purposes stated in the [subpoena], and not by reference to extraneous evidence." *Carter*, 636 F.2d at 789. Respondent's vague allegations of improper purpose – which again fail to identify any nefarious motive on the part of any official investigating the case – cannot satisfy this standard. Nor is general political discourse around Harvard by other Executive Branch officials properly relied on to show an improper purpose in issuing a subpoena. *See QueerDoc, PLLC v. DOJ - United States Dep't of Just.*, 187 F.4th 1112, 1140-1141 (9th Cir. 2026) (reversing district court finding of improper purpose where respondent improperly relied on "political discourse" by political leaders) (internal citations omitted).

The cases Harvard relies upon are easily distinguished. *In re Administrative Subpoena,* 836 F. Supp. 3d 459 (D.R.I. 2026), found a DOJ subpoena issued for an improper purpose where the underlying investigation lacked a "legally cognizable basis." 836 F. Supp. 3d at 471. Here, however, the subpoena is part of an investigation of discriminatory employment practices—which if substantiated are clearly legally cognizable—including race, sex and national origin-based hiring and promotion, conduct expressly prohibited by Title VII. *In re Administrative Subpoena No. 25-1431-019,*800 F. Supp. 3d 229 (D. Mass. 2025) is similarly distinguishable. There, the respondent established that the subpoena was issued for an improper purpose where DOJ failed to provide an affidavit describing any fraudulent billing or other practices made unlawful under the statute. Here, by contrast, EEOC has provided an affidavit from the Deputy Director and has identified specific practices prohibited by Title VII – namely, discriminatory hiring, promotion and conditions of employment – as the focus of the inquiry. Finally, *Perkins Coie LLP v. U.S. Dep't of Just.*, 783 F.

Supp. 3d 105, 160-161 (D.D.C. 2025) pertained to allegations that EEOC took investigatory actions outside of statutorily authorized processes at the direction of the President, including by not following the Commissioner's Charge process. But here Harvard cannot contest that the EEOC is statutorily authorized to issue both the subpoena, nor was there a public directive from the President to investigate Harvard, and this case is therefore inapposite.[7]

Certainly, a legitimate purpose exists here, and this is plain from the face of the Charge and the Subpoena. Having not only failed to show any improper motive on the part of the EEOC's investigative personnel in issuing the subpoena, but also having failed to show the *lack of any proper purpose*, Respondent cannot carry its burden. *Carter*, 636 F.2d at 789.

**IV. The Subpoena's Scope Does Not Indicate It Was Issued For an Improper Purpose.**

Harvard suggests that the broad scope of information sought by the subpoena is further evidence of improper purpose. But the scope of the information sought, including the temporal scope, is directly tied to the scope of the charge itself. *See Shell Oil*, 466 U.S. at 72 ("under the statute, the Commission may insist that the employer disgorge any evidence relevant to the allegations of discrimination contained in the charge"); *see also E.E.O.C. v. Astra U.S.A., Inc.*, 94 F.3d 738, 746 (1st Cir. 1996) ("the charge is capable of supporting … a full probing of any evidence of discriminatory practices unearthed during the course of the initial investigation"). Moreover, courts have previously held that EEOC is entitled to obtain broad categories of information when investigating or prosecuting systemic discrimination, as alleged here . *See, e.g., E.E.O.C. v. Technocrest, Sys.,* 448 F.3d 1035, 1040 (8th Cir. 2006) (where charges alleged company-wide hiring discrimination, district court abused its discretion in failing to enforce subpoena seeking all employee personnel files); *E.E.O.C. v. Roadway Exp., Inc.,* 261 F.3d 634,

[7] The Commission does not concede this case was correctly decided.

642 (6th Cir. 2001) (upholding district court order to enforce subpoena seeking broad evidence of hiring and promotion practices company-wide, consistent with the temporal scope of the charge); *cf. E.E.O.C. v. Autozone, Inc.,* 258 F. Supp. 2d 822, 832 (W.D. Tenn. 2003) (under Fed. R. Civ. P. 26, allowing 8-year temporal scope of discovery in pattern or practice suit growing out of commissioner's charge).

**V. Academic Freedom Does Not Insulate an Employer From Title VII.**

Finally, Respondent suggests that the subpoena was issued for an improper purpose because it – and the underlying investigation – seeks to curtail Respondent's "autonomous decisionmaking" and interfere with its ability to evaluate teaching and scholarship without government interference, threatening its right to the academic freedom guaranteed by the First Amendment. ECF No. 26 at 13. But Respondent's argument would mostly exempt institutions of higher learning from the requirements of the non-discrimination laws, including Title VII, an outcome that both Congress and the courts have flatly rejected. *University of Pennsylvania v. E.E.O.C.,* 493 U.S. 182, 190 (1990) (noting that Congress extended Title VII's reach to colleges and universities in "response to the widespread and compelling problem of invidious discrimination in educational institutions."). Respondent cannot evade the subpoena by asserting that an investigation into whether it has complied with Title VII with respect to its employment practices threatens its First Amendment rights and, as such, is for an improper purpose.

Academic employers are not exempt from Title VII. *See Lee v. Hughes Med. Inst.,* 607 F. Supp. 3d 52, 63 (D. Mass. 2022) ("tenure decisions are not exempt from discrimination law and the Court may not abdicate its duty of 'eliminating workplace discrimination' simply because the alleged discrimination occurs in [an] academic setting."); *Mawaka v. Bd. of Trs. of the Univ. of the Dist. of Columbia,* 926 F.3d 859, 864 (D.C. Cir. 2019) ("Although the First Amendment grants a

university certain freedoms, the freedom to discriminate is not among them.”). Moreover, there is nothing unusual about an EEOC subpoena enforcement during investigation of a college or university’s employment practices. *See, e.g., E.E.O.C. v. Franklin and Marshall College,* 775 F.2d 110 (3d Cir. 1985); *E.E.O.C. v. Trustees of University of Pennsylvania,* 827 F. Supp. 3d 554 (E.D. Penn. 2026); *E.E.O.C. v. Kansas City, Kansas Community College,* No. 23-202-DDC-ADM, 2024 WL 3665290 (D. Kan. Aug. 6, 2024). Harvard’s complaint that any investigation of its hiring and promotion practices is a threat to its academic freedom is an argument that numerous courts, and – most importantly the Supreme Court – have roundly rejected before. *See, e.g., Univ. of Penn.,* 493 U.S. at 193.[8] “Academic freedom does not embrace the freedom to discriminate.” *Villanueva v. Wellesley Coll.,* 930 F.2d 124, 129 (1st Cir. 1991) (internal citation omitted).

Harvard suggests that, because it is not a “paradigmatic” employer – the contours and mechanics of its employment practices are so unique and unregulatable that any effort to investigate whether those practices comply with Title VII must be for the improper purpose of prying into decisions “that cut to the very core of academic freedom,” *see* ECF No. 26 at 14, 22-23, rather than the proper, lawful, and ordinary purpose of investigating compliance with the statute. But Harvard essentially asks this Court to turn back the clock to pre-1972 when there was an educational institution exemption to Title VII, which Congress expressly removed in the 1972 amendments. *Univ. of Penn.,* 493 U.S. at 190 (“This extension of Title VII [to educational institutions] was Congress’ considered response to the widespread and compelling problem of invidious discrimination in educational institutions”). Whether Respondent exercised “genuinely

[8] Respondent’s argument that the First Amendment’s protection of its “private internal judgments and deliberations through which Harvard determines who may teach,” ECF No. 26 at 17-18, shields it from enforcement of EEOC’s subpoena is essentially the same argument the Supreme Court rejected when it dismissed the University of Pennsylvania’s argument that its ability to exercise its academic freedom with respect to tenure decisions would be threatened by disclosure of tenure materials to EEOC. *Univ. of Penn.,* 493 U.S. at 199-200.

academic" decision-making – rather than discriminatory decision-making – is a matter to be decided in any potential merits litigation should the EEOC investigation conclude there was cause to believe discrimination occurred, not before. *See E.E.O.C. v. Tempel Steel Co.,* 814 F.2d 482, 485 (7th Cir. 1987) ("EEOC's authority to investigate is not negated simply because the party under investigation may have a valid defense to a later suit").

None of Respondent's cases insulate academic institutions from the EEOC's investigatory subpoena authority. *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 226 (1985), concerns whether a student has a due process right to be free from arbitrary decision-making. True, when an admissions decision is made as part of "genuinely academic" decision-making, that decision should not ordinarily be subject to judicial review. *Id.* But by contrast, it is well settled that decisions made on non-academic grounds (such as related to student conduct matters) are not entitled to deference by courts. *See, e.g., Doe v. Purdue Univ.*, 928 F.3d 652, 663 (7th Cir. 2019) (Barrett, J.). And while *Asociacion de Educacion Privada de Puerto Rico, Inc. v. Garcia-Padilla*, 490 F.3d 1 (1st Cir. 2007) expressed in broad terms the importance of academic freedom, it did not create an exemption from civil rights law enforcement for educational institutions. And *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) applied Title VII to the tenure decision at issue, and does not support categorical Title VII immunity. Harvard's argument that academic freedom shields it from inquiry into its employment practices was foreclosed by the 1972 Title VII amendments, as well as specifically in the subpoena enforcement context by *University of Pennsylvania*, and the Court should reject its resurgence here.

**CONCLUSION**

For the above reasons, Respondent fails to carry its burden, and the subpoena should be enforced without delay.

Dated: November 16, 2026

Respectfully submitted,

/s/ Rudy Sustaita
Rudy L. Sustaita (Tx Bar No. 19523560)
Regional Attorney
rudy.sustaita@eeoc.gov | (346) 327-7691
1919 Smith St., 6th Floor
Houston, Texas 77002
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of November, 2026, I have submitted the foregoing document with the clerk of court for the District of Massachusetts, using the electronic case filing system of the Court. Counsel hereby certifies that they have served all parties electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

*/s/ Rudy Sustaita*

**Rudy L. Sustaita**