**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Applicant,<br><br>v.<br><br>HARVARD UNIVERSITY,<br><br>Respondent. | MBD NO. 1:26-MC-91522-AK |

**MEMORANDUM IN OPPOSITION TO RESPONDENT'S MOTION FOR LEAVE TO CONDUCT DISCOVERY AND FOR AN EVIDENTIARY HEARING**

Plaintiff, U.S. Equal Employment Opportunity Commission (the "EEOC" or "Commission"), through undersigned counsel, respectfully submits the following opposition to the motion filed by Respondent, President and Fellows of Harvard College ("Harvard" or "Respondent"), for leave to conduct discovery and for an evidentiary hearing. Though captioned as a request for "limited" discovery, it is clear from Harvard's papers that it seeks to turn this summary proceeding to enforce an administrative subpoena into full-blown civil litigation. Harvard's request fails to meet the heavy burden placed on subpoena respondents for obtaining *any* discovery and promises to pull the Court into prolonged litigation, including additional motion practice to resolve inevitable privilege disputes. Lacking the "firm evidence" of improper purpose required by the First Circuit, Harvard instead rests its request for discovery on unsupported accusations, conjecture and speculation. For the reasons below, the motion should be denied.

## I. Background

The Commission has filed an application to enforce administrative subpoena No. HU-A26-02, and this Court issued an Order to Show Cause. Respondent responded to the Order to

Show Cause and opposed the Commission's application for enforcement. The Respondent's opposition argues, among other grounds, that the EEOC's application for enforcement should be denied because the subpoena was issued for an improper purpose. ECF No. 26, at 18-23. In connection with this argument, Respondent has also filed a motion for discovery concerning the agency's privileged deliberative processes, including the reasons for initiating the commissioner's charge, its decision making concerning the scope and timing of requests for evidence, communications with other government agencies or officials about the investigation, agency decisions regarding allocation of agency resources to the investigation of Respondent's alleged discriminatory employment practices, and the charge being obtained by a media outlet, which Respondent – without evidence – accuses EEOC of orchestrating. ECF No. 32, at 5. For the reasons below, Respondent is not entitled to discovery or an evidentiary hearing, nor does the Court need an evidentiary hearing to enforce the subpoena at issue here.

## II. Argument

Only "extraordinary circumstances" allow even limited discovery to hunt through agency processes for the "firm evidence" of bad faith required to invalidate a duly issued administrative subpoena. *United States v. Comley*, 890 F.2d 539, 542–543 (1st Cir. 1989) (affirming district court's order denying discovery and enforcing administrative subpoena). Incorporating material from its opposition to the EEOC's application for subpoena enforcement, Respondent's motion for discovery repeats the correlations of timing, scope, alleged procedural "irregularities," speculation of improper intra-branch collusion, and a bare accusation of improper disclosure that it deems evidence of improper purpose. The conjecture on which Respondent pins its argument falls well short of justifying discovery of the Commission's deliberative process[1] or conducting an

---

[1] As the Supreme Court has described, the deliberative process privilege is a form of executive

evidentiary hearing in what courts have repeatedly characterized as a "summary" process. *See Comley,* 890 F.2d at 541. Further, although Respondent characterizes its motion as one for "limited" and "targeted" discovery, the discovery sought is broad, would extend six months (a period so improper for a summary proceeding that it appears asserted solely for the purposes of attempting to delay the EEOC investigation), and would be intrusive and consequential. The discovery sought is for privileged information that lies at the heart of the Commission's deliberative processes, and there is long line of precedent protecting an agency's decision making from inquiry absent a judicial finding of extreme misconduct, which is absent here.

**A. The Applicable Standard.**

Discovery is improper in a summary subpoena enforcement proceeding "[e]xcept in extraordinary circumstances," and "[s]uch requests are not looked upon favorably." *Comley*, 890 F.2d at 543 (quoting *FTC v. Carter*, 636 F.2d 781, 789 (D.C. Cir.1980)) (internal quotation marks omitted). In the subpoena enforcement context, the First Circuit has said that no evidentiary hearing is needed where the party seeking to evade subpoena enforcement has "offered no meaningful evidence that the Government might be exceeding or abusing its investigatory powers." *Sec. & Exch. Comm'n v. Howatt*, 525 F.2d 226, 229 (1st Cir. 1975). Respondent has cited no case in which circumstances like those alleged here satisfied these standards.

Rather than focus on these precedents, Respondent improperly relies on *United States v. Clarke*, 573 U.S. 248, 254 (2014), for the standard it argues should apply: it may interrogate EEOC

---

privilege. "To protect agencies from being forced to operate in a fishbowl, the deliberative process privilege shields from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *U.S. Fish and Wildlife Serv. v. Sierra Club,* 592 U.S. 261, 267 (2021) (internal citations and quotations omitted). "The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news[.]" *Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8-9 (2001) (noting that the object of the privilege is to "enhance the quality of agency decisions") (internal quotations omitted).

agency officials if it identifies "specific facts or circumstances plausibly raising an inference of bad faith," and that "circumstantial evidence can suffice." *See* ECF No. 32 at 5, 14, 15, 17, and 19. *Clarke*, however, involved an IRS tax summons proceeding, and that framework does not govern the enforcement of an EEOC administrative subpoena.[2] The First Circuit has not applied the *Clarke* standard - which did not address discovery, but only addressed the entitlement to examine an IRS agent at an evidentiary hearing - to an administrative subpoena, and the standard should not be applied here.[3] Examining administrative subpoenas in the context of the one presently before the Court, the First Circuit has held that only "extraordinary circumstances" permit discovery. Even were the lower *Clarke* standard applicable, Respondent's conjectures do not satisfy it. As the Supreme Court noted when it overturned the Eleventh Circuit's order reversing the district court's denial of discovery in *Clarke,* "we have no doubt that the Court of Appeals viewed even bare allegations of improper purpose as entitling a summons objector to question IRS

---

[2] The Commission has authority to issue a subpoena under 29 U.S.C. § 161, incorporated into Title VII by 42 U.S.C. § 2000e-9.

[3] *Clarke* addresses the entitlement to examine an IRS agent at an evidentiary hearing under *United States v. Powell*, 379 U.S. 48, 58-59 (1964), in which the Supreme Court first addressed the validity of an IRS tax summons. The First Circuit has not and would not review a challenge to an administrative EEOC subpoena under the standard described in *Clarke*; an evidentiary hearing is typical prior to enforcement to a tax summons. Supreme Court decisions addressing the validity of an EEOC subpoena reference the standard and framework identified in *United States v. Morton Salt Co.*, 338 U.S. 632 (1950), for civil, administrative subpoenas – a framework in which evidentiary hearings are rare. *See McLane Co. v. E.E.O.C.*, 581 U.S. 72, 76–77 (2017); *accord United States v. Sturm, Ruger & Co*., 84 F.3d 1, 4 (1st Cir. 1996) (applying *Morton Salt* standard to OSHA subpoena); *Howatt,* 525 F.2d at 229.

The burden for an evidentiary hearing under the *Powell/Clarke* line of cases – to reiterate, applying only to IRS tax summons enforcement – is lower. A taxpayer can rebut a presumption of good faith, and normally proceed to an evidentiary hearing, merely by creating a "substantial question in the court's mind regarding the validity of the government's purpose…she may hoist her burden either by citing new facts or by bringing to light mortal weaknesses in the government's proffer." *United States v. Gertner*, 65 F.3d 963, 967 (1st Cir. 1995) (internal quotation marks and citations omitted). This is a far lesser standard than the "extraordinary circumstances" of *Comley*, 890 F.2d at 543, and the "meaningful evidence" of *Howatt.* 525 F.2d at 229.

agents[,]" and reasoned that courts applying the proper standard should avoid "turning every summons dispute into a fishing expedition for official wrongdoing." *Clarke,* 573 U.S. at 255.

Unique considerations also apply here. Respondent seeks document production, written discovery, and depositions on all significant aspects of the investigation: "the decisions to initiate and escalate the investigation and determine the scope of the investigation, the requests for information, and the subpoena." ECF No. 32 at 18. Allowing such discovery would cause far more than the ordinary harm of bogging down an agency investigation with ancillary disputes in a process designed to be summary, which is harm enough. *Sturm, Ruger & Co*., 84 F.3d at 5 ("Subpoena enforcement proceedings are designed to be summary in nature" *see Comley*, 890 F.2d at 541, and an 'agency's investigations should not be bogged down by premature challenges to its regulatory jurisdiction.'") (quoting *F.T.C. v. Swanson*, 560 F.2d 1, 2 (1st Cir. 1977)).

Because the subpoena arises from a Charge initiated by a Commissioner [42 U.S.C. § 2000e-6(e)], an order permitting the discovery Respondent seeks here would likely license intrusive and plenary interrogation of the agency's highest official about deliberative processes and agency decisions. *Cf. In re United States (Jackson*), 624 F.3d 1368, 1373-74 (11th Cir. 2010) (observing that "compelling the [Food and Drug Administration] Commissioner's testimony by telephone for 30 minutes disrespected the separation of powers."). Given the topics Respondent has identified in its motion (including the decision to initiate the investigation, the agency's determination of the scope of the investigation, the agency's decisions regarding what evidence to seek and to issue a subpoena, *see* R. Doc. 32 at 14), future disputes over the Commission's assertion of governmental deliberative process privilege in response to such discovery are likely inevitable. *See, e.g., E.E.O.C. v. Evans Fruit Co., Inc.,* 2012 WL 442025, at *2 (E.D. Wash. Feb. 10, 2012) (holding governmental deliberative process privilege barred discovery concerning

agency's "analysis of information it obtained, its witness credibility evaluations, its evaluation of the evidence, personal opinions of EEOC representatives, and the decision-making process of the EEOC"); *E.E.O.C. v. Pinal County,* 714 F. Supp. 2d 1073, 1078 (S.D. Cal. 2010) (denying discovery that "would reveal the EEOC's evaluation and analysis of the extensive factual information" and infringe on the deliberative process privilege). Respondent's desire to take discovery regarding any communications "with the EEOC and other governmental officials," *see* ECF No. 32 at 14, may invite additional disputes over the scope of privilege surrounding inter-agency communications. To be entitled to discovery under these circumstances, Respondent should have to show truly extraordinary circumstances that justify such an extraordinary request, and it has not done so here.

**B. Respondent Has Not Demonstrated Extraordinary Circumstances Adequate to License an Extraordinary Intrusion into Agency Deliberative Processes, Nor Offered Meaningful Evidence to Merit an Evidentiary Hearing.**

There is no meaningful evidence of improper purpose making an evidentiary hearing necessary, and certainly no extraordinary circumstances justifying discovery of deliberative processes. Respondent imbues coincidences of timing, scope, and regular processes of investigation assignment with improper motives, and Respondent offers conjecture on intra-branch collusion and an evidence-free accusation of improper disclosure of the Charge. This is not meaningful evidence, nor does the litany demonstrate extraordinary circumstances. *See, e.g., Commodity Futures Trading Comm'n v. Harker,* 615 F. Supp. 420, 424 (D.D.C. 1985) (determining that, even if subpoena respondent's assertion that Commission "leaked" information about investigation were true, neither that, nor the broad scope of the subpoena, nor the agency's decision to enforce the subpoena in Washington D.C. instead of Kansas City, showed the extraordinary circumstances needed to justify discovery into motive or improper purpose behind

the subpoena); *cf. S.E.C. v. Caramadre,* 717 F. Supp. 2d 217, 221-23 (D.R.I. 2010) (rejecting respondents' argument that administrative subpoenas served no investigative purpose and were in bad faith, as bare allegation that SEC was seeking improper tactical advantage was insufficient to preclude subpoena enforcement). Respondent is therefore not entitled to an evidentiary hearing or to engage in the sweeping examination of agency deliberative processes that it proposes.

**a. The Charge Has an Evidentiary Basis**

While Respondent vehemently insists that the Commissioner's Charge - which alleges that discrimination may have occurred and reaches no conclusion - is a product of coordinated retaliation, Respondent does not – and cannot – deny the charge's basis in Respondent's own public statements. While Respondent does deny the substance of the allegations, ECF No. 32 at 6, it does not deny that the Commissioner's Charge detailed an evidentiary foundation. The Charge not only detailed the basis of the allegations for investigation, it also included graphs – published by Respondent – that show a consistent increase in every demographic group except for white males, dating back to 2013. *See* ECF No. 1-3 at 2-3. These trends reflect, in Respondent's own words, "progress in diversifying" faculty, and Respondent has defined "diversifying" in terms of race (color) and sex, i.e., solely increasing the proportion of faculty that can be described as "women," "women of color," and "men of color." *Id.* Clearly, the allegations of the Charge are not baseless; Respondent's public admissions are sufficient to constitute a non-frivolous basis for further investigation of systemic discrimination against individuals who do not fit within Respondent's preferred categories. Congress did not require that a Commissioner hold any "objectively verifiable suspicion at the outset" when issuing a Charge, *E.E.O.C. v. Shell Oil Co*., 466 U.S. 54, 62 (1984),[4] but the presence of a verifiable evidentiary foundation—based on Harvard's own

---

[4] "[I]n the context of pattern-and-practice cases […] [i]nsofar as he is able, the

public disclosures—for the alleged discrimination undercuts Respondent's claim that the Charge was brought in bad faith or for an improper purpose, entitling it to discovery.

**b. Respondent's Assertion That Irregularities in the Investigation Suggest Improper Purpose is Refuted by the Facts and the Declaration of Houston Deputy Director Jeremy Crosbie.**

Respondent attempts to carry its burden of "extraordinary circumstances" by mischaracterizing ordinary investigative steps taken by the Commission and juxtaposing the steps with unrelated proceedings to assert improper purpose: "[t]his subpoena is in clear and direct service of the Government's unconstitutional assault against Harvard…." ECF No. 26 at 7.

> The very day after Harvard won summary judgment and an injunction in that matter [Respondent's suit regarding federal funding], the EEOC doubled down, demanding interviews with 10 senior Harvard officials, including the University's President and Provost. The EEOC demanded that those interviews, including of observant Jews, occur during Rosh Hashanah. The following day, the EEOC first threatened Harvard with a subpoena.

ECF No. 26 at 8; *see also* ECF No. 32 at 12. Respondent adds, "The Government later issued this subpoena five days after Harvard moved to dismiss the Government's admissions-records suit." ECF No. 32 at 12.

The nefarious purpose Respondent surmises is fanciful, and the narrative in support is misleading. What Respondent characterizes in its brief as the Commission "*demanding* interviews with 10 Harvard officials" was nothing more than an investigator providing weeks of advance

---

Commissioner should identify the groups of persons that he has reason to believe have been discriminated against, the categories of employment positions from which they have been excluded, the methods by which this discrimination may have been effected, and the periods of time in which he suspects the discrimination to have been practiced." *Shell Oil Co.,* 466 U.S. at 73. The Commissioner's Charge underlying the instant subpoena meets this standard: it identifies men, Asian individuals, and heterosexuals as the groups believed to be discriminated against; identifies faculty positions as among those at issue; hiring, promotion and access to professional development as the methods by which the discrimination may have been effected, and the period of time since 2018 as the period during which the discrimination may have been practiced. ECF No. 1-3.

notice of his intent to interview relevant witnesses – a routine part of an investigation. *See* Crosbie Decl., filed herewith, at ¶ 9; *see also* EEOC Compliance Manual at 23.1 ("Interviews ae an integral part of most investigations."). When Respondent objected to the proposal and asked to meet and confer on the interviews, the Commission agreed to postpone the interviews and meet and confer regarding the number of individuals to be interviewed. *See* Crosbie Decl. at ¶16 and attached Exhibits 2 and 3. As for the timing of the notice of interviews, the Houston District's Deputy Director, who oversaw the investigation, had no knowledge of what was occurring in Respondent's federal funding proceeding or admissions-records proceedings, associated court rulings, or what motions Respondents had made; the timing of requests were determined by the needs of the investigation. *See* Crosbie Decl. at ¶ 17. Respondent's insinuation that the Commission, in a fit of retaliatory pique from Respondent's prevailing in an unrelated proceeding, purposefully "demanded" to interview witnesses over Rosh Hashana to harass Respondent is entirely unfounded.

The same applies to the "threat of subpoena" made on September 5, 2025, that Respondent characterizes as retaliation for prevailing in the unrelated federal funds proceeding. On August 1, 2025, the Commission sent two requests for information to Respondent with thirty days to comply. *See* Crosbie Decl. at ¶ 10. On August 15, 2026, weeks before any purportedly relevant happening in unrelated proceedings, the investigator communicated to Respondent that its request for an extension had been granted to September 8, 2025. *See* Crosbie Decl. at ¶ 12 and attached Exhibit 1. On September 5, 2025, the investigator sent an email noting that extension to September 8, 2025, had been granted (an extension date communicated before Respondent prevailed in the unrelated proceeding), that no further extensions would be granted, and that a subpoena will be issued if a full and complete response had not been received by the extended date. *See* ECF No.

28-8; Crosbie Decl. at ¶ 13. It is routine for the Commission to notify respondents in investigations that a subpoena may be issued if a request is not fulfilled. *See* EEOC Compliance Manual at 24.1(c). The relevant date for any such subpoena – September 9, 2025 – clearly corresponded to the final extension date of September 8, a date communicated *before* any occurrences in the unrelated proceeding. In any event, even by Respondent's own telling, no subpoena was issued then. Instead, after receiving Respondent's incomplete response to the request for information and request to meet and confer, the EEOC continued with its ultimately unsuccessful efforts to work with Respondent; the EEOC agreed to meet and confer with Respondent on the scope of the information requested rather than proceed with a subpoena. *See* Crosbie Decl. at ¶ 14 and Exhibits 2 and 3. The Commission, after meeting and conferring with Respondent in calls and emails about the scope of the requests, was ultimately unable to coax from Respondent an adequately responsive production of documents, and the subpoena followed.

Respondent's other allegations fare no better. Respondent alleges that the assignment of the Charge to the Houston Office is part of the retaliatory web of actions taken by the Commission (although the retaliatory effect of such is unclear because the Commission has never suggested that Respondent's representatives would be required to travel). *See* ECF No. 32 at 16. However, such an assignment is not "irregular" in the least – it is not uncommon for the Commission to assign and reassign investigations among its field offices regardless of the place of discrimination. *See* Crosbie Decl. at ¶ 5.

Finally, Respondent's assertion that "circumstances suggest that someone within the EEOC supplied the Charge to the press, directly or through an intermediary" is a baseless accusation with no supporting evidence. The EEOC categorically denies that it disclosed the charge to the press or directed anyone else to disclose the charge.

In sum, Respondent's failed attempt to paint ordinary investigative steps and interactions as retribution does not rise to the level of "extraordinary circumstances" justifying discovery or constitute "meaningful evidence" meriting an evidentiary hearing.

**c. The Two Cases Cited by Respond in Support of its Request for a Hearing and Discovery Are Inapposite.**

Respondent cites two cases in which courts authorized limited discovery of agency motives, but neither is apt. *See* ECF No. 32, at 10-11, 13 (citing *Sec. & Exch. Comm'n v. Wheeling-Pittsburgh Steel Corp*., 648 F.2d 118 (3d Cir. 1981) and *E.E.O.C. v. Bashas', Inc*., 2009 WL 3241763 (D. Ariz. Sept. 30, 2009)). In *Wheeling-Pittsburgh,* involving an administrative subpoena arising from an SEC investigation, the lower court had determined that the SEC's claims were "patently frivolous," undercutting the lawful predicate required for opening an SEC investigation (a likelihood of a securities violation). The Third Circuit noted that, if that finding were maintained on remand, "the judicial conclusion would serve as an impressive indication of agency bad faith or harassment." 648 F.2d at 127. An evidentiary hearing had adduced documentary and testimonial evidence that the SEC had started the investigation after receiving a hand-delivered request to do so by a senator who had been lobbied by a competitor company.[5] In that context, which included *both* the lower court's finding that the SEC lacked the required predicate to open an investigation *and* unequivocal documentary and testimonial evidence of senatorial intervention, the Third Circuit determined that respondent had offered "meaningful evidence" sufficient to

---

[5] The lower court developed evidence at an evidentiary hearing because the Third Circuit had determined that a hearing should be routinely held after service of a subpoena enforcement action. *Id.* at 128 (approving three-step procedure in which the government files the action verifying compliance with the *Powell* standards, a hearing is held after service, and at the hearing the government must prove its compliance with the *Powell* standards). The First Circuit has not adopted this approach; no hearing is necessary where there is no "meaningful evidence" of improper purpose. *Howatt,* 525 F.2d at 229.

permit limited discovery. *Id.* at 128.

The circumstances of the Commission's investigation and subpoena are not comparable. First, all lawful predicates to the Commissioner's Charge were satisfied, and there is no assertion to the contrary.[6] Even if some quantum of pre-Charge evidence were required, Respondent has pointedly not asserted that the allegations are frivolous and thus illustrative of bad faith. Second, Respondent has offered no evidence at all aside from coincidences of timing and overlap, lawful and discretionary processes of investigative assignment, speculation of improper intra-branch collusion, and a bare accusation of improper disclosure. This does not compare to the clear testimonial and documentary evidence, combined with the lack of lawful predicate to initiate the agency investigation, that was deemed "meaningful" enough in *Wheeling-Pittsburgh* to allow a closely supervised and limited inquiry into agency processes.

Also distinguishable is the non-controlling case of *E.E.O.C. v. Bashas', Inc.*, 2009 WL 3241763 (D. Ariz. Sept. 30, 2009). The court in *Bashas'* permitted limited discovery but did not apply an "extraordinary circumstances" standard. Instead, it applied (citing a preceding order) the much lesser burden that "all [the respondent] needs to do is develop facts from which a court might *infer a possibility* of some wrongful conduct by the [EEOC]." *E.E.O.C. v. Bashas', Inc.*, 2009 WL 1783437, at * 7 (D. Ariz. June 18, 2009) (internal quotation marks and citation omitted) (emphasis

---

[6] A commissioner may file a charge "on [her] own initiative" when she "has reason to think that an employer has engaged in a 'pattern or practice' of discriminatory conduct." *Shell Oil Co.*, 466 U.S. at 62. Congress eliminated any requirement that a commissioner hold "objectively verifiable suspicion at the outset," postponing whether the allegations have a basis "until after the Commission ha[s] completed its inquiries." *Id.* at 75–77. And a charge grounded in the "statistical manifestations" of an employer's workforce composition is a recognized and proper basis for a systemic investigation, even though the commissioner "rarely can identify any single instance of discrimination until the Commission has gained access to the employer's personnel records." *Id.* at 70–71.

in original), quoted at 2009 WL 3241763, at *14.[7] Under this relaxed burden, where the EEOC did not deny possible communications with counsel in an independent private class action encompassing the same discriminatory conduct as the Charge, the court determined "on this record [it] can 'infer a possibility of some wrongful conduct' in terms of its outside communications and motives." *Id.* at *14 (citing and quoting its earlier order).

The *Bashas'* court thus authorized limited discovery – and it resulted in a "tortured history," *E.E.O.C. v. Bashas', Inc.*, 2015 WL 13810317 (D. Ariz. August 28, 2015), of proceedings that generated eight orders over six years.[8] The action resolved with the enforcement of the subpoena after a finding that there was no abuse of process. *See E.E.O.C. v. Bashas', Inc.*, 828 F. Supp. 2d 1056, 1089 (D. Ariz. 2011) (holding, after completion of discovery, that Bashas' had not

---

[7] The court had held in the prior order that a party must show a "a preliminary and substantial demonstration of abuse [of process]," but "to satisfy this burden '[a]ll [Bashas'] needs to do is develop facts from which a court might *infer a possibility* of some wrongful conduct by the [EEOC]." *E.E.O.C. v. Bashas', Inc.*, No. CIV 09-0209-PHX-RCB, 2009 WL 1783437, at *7 (D. Ariz. June 18, 2009) (interpolations and emphasis in original) (quoting *In re E.E.O.C.*, 709 F.2d 392, 400 n.5 (5th Cir. 1983)).

[8] *See E.E.O.C. v. Bashas', Inc.*, No. CIV 09-0209-PHX-RCB, 2009 WL 1783437 (D. Ariz. June 18, 2009)) (setting Bashas' motion for leave to conduct limited discovery into the EEOC's purpose for hearing together with the EEOC's application to enforce the administrative subpoena, and ordering Bashas' to show cause why it should not be compelled to comply); *E.E.O.C. v. Bashas', Inc.,* No. CIV09-0209PHXRCB, 2009 WL 3241763 (D. Ariz. Sept. 30, 2009)) (denying the EEOC's application to enforce the subpoena without prejudice and granting Bashas' leave to conduct limited discovery into whether the subpoena was issued for an improper purpose); (*E.E.O.C. v. Bashas', Inc.*, No. CIV 09-0209 PHX RCB, 2009 WL 5206632 (D. Ariz. Dec. 24, 2009)) (granting in part and denying in part the EEOC's motion to clarify, and narrowing the scope of the purpose-directed discovery the court had permitted into the subpoena's issuance); *E.E.O.C. v. Bashas', Inc.*, No. CIV 09-0209-PHX-RCB, 2010 WL 3724697 (D. Ariz. Sept. 16, 2010) (resolving Bashas' motion to compel the EEOC's responses to the purpose-directed discovery and addressing a confidentiality order over the subpoenaed information); *E.E.O.C. v. Bashas', Inc.*, 828 F. Supp. 2d 1056 (D. Ariz. 2011)) (holding, after completion of the purpose-directed discovery, that Bashas' had not shown the subpoena was issued to abuse the court's process or was overbroad as to time frame, and directing Bashas' to comply with the subpoena except as to requests deemed irrelevant), vacated and remanded in part on other grounds, *E.E.O.C. v. Bashas' Inc.*, 585 F. App'x 325 (9th Cir. 2014)) (vacating and remanding only the confidentiality order entered in connection with enforcement of the subpoena); *E.E.O.C. v. Bashas', Inc.*, No. CIV 09-0209 PHX RCB, 2011 WL 6098788 (D. Ariz. Dec. 8, 2011)) (entering the confidentiality order governing the subpoenaed material after the court had ordered compliance); *E.E.O.C. v. Bashas', Inc.*, 2015 WL 13810317 (D. Ariz. August 28, 2015) (denying motion to dismiss subpoena enforcement action on ground of laches).

shown the subpoena was issued to abuse the court's process) (vacated and remanded in part on other grounds, *E.E.O.C. v. Bashas' Inc.*, 585 F. App'x 325 (9th Cir. 2014)).

*Bashas'* therefore does not avail Respondent because this Court may allow discovery only upon a showing of "extraordinary circumstances," *Comley*, 890 F.2d at 543, and not upon demonstrating that the court "might infer a possibility of some wrongful conduct." Further, *Bashas'* offers a cautionary example of how allowing even "limited" discovery not warranted by extraordinary circumstances can spiral into a multi-year saga of discovery disputes, continued briefing, hearings, and full-fledged civil litigation that is not appropriate to a summary subpoena enforcement action.

**C. The Areas of Inquiry Proposed by Respondent Represent an Extraordinary Invasion of Agency Decision Making Protected by the Governmental Deliberative Process Privilege, and Respondent's Request Should Not Be "Looked Upon Favorably."**

Two of Respondent's three discovery topics are squarely aimed at the Commission's internal decision-making and are plenary in nature. Respondent seeks to inquire into why the Commission initiated the Charge and how it determined the scope of its investigation, and to inquire into who assigned the matter to a particular office and why. *See* ECF No.. 32 at 18. These sweeping areas of inquiry reach the heart of the governmental deliberative process privilege, which "rests on a policy of affording reasonable security to the decision-making process within a government agency." *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affs*., 60 F.3d 867, 884–885 (1st Cir. 1995). "Manifestly, the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions." *N. L. R. B. v. Sears, Roebuck & Co*., 421 U.S. 132, 151–153 (1975). In this context, Respondent's request for discovery on the broad topics proposed is extraordinary, and "the chilling effect" of allowing it to go forward absent truly extraordinary circumstances could wreak extraordinary harm on the quality of agency decisions. *United States*

*Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021) ("To encourage candor, which improves agency decision making, the privilege blunts the chilling effect that accompanies the prospect of disclosure.").

The third area of proposed inquiry, the "source, authorization, and purpose of the Charge's disclosure to the press" is premised on only the bare accusation that the Commission disclosed the Charge to the Washington Free Beacon. ECF No. 32 at 18. Respondent has offered no evidence to support this accusation, despite bearing the burden on its motion, and any discovery on it should be rejected out of hand. Even under the less burdensome *Clarke* standard, "[b]are assertion or conjecture is not enough." *Clarke*, 573 U.S. at 254. Moreover, EEOC categorically denies that it disclosed the charge to the press or directed anyone else to disclose the charge.

Further, Respondent seeks plenary inquiry into a Charge initiated by a commissioner, here, the then Acting Chair of the Commission, Andrea R. Lucas. Respondent directly implicates Chair Lucas in its assertion of improper motive. *See* ECF No. 32 at 9-10. It is foreseeable that Respondent will seek to probe Chair Lucas's own deliberations, decisions, and actions in relation to the proposed areas of inquiry. Allowing discovery that could intrude upon high agency officials' deliberative processes "would have serious repercussions for the relationship between two coequal branches of government." *In re United States (Jackson)*, 624 F.3d 1368, 1373-74 (11th Cir. 2010) (observing that "compelling the [Food and Drug Administration] Commissioner's testimony by telephone for 30 minutes disrespected the separation of powers."). In *U.S. v. Morgan*, 313 U.S. 409, 422 (1941), the Court determined that it was error for the lower court to allow companies affected by an order of the Secretary of Agriculture, alleging that he was biased, to have examined the Secretary about his deliberative processes. In so ruling, the Court noted "that although the administrative process has had a different development and pursues somewhat different ways from

those of courts, they are to be deemed collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other." *Id.* Thus, "top executive department officials should not, absent extraordinary circumstances, be called to testify or deposed regarding their reasons for taking official action." *Bogan v. City of Bos.*, 489 F.3d 417, 423 (1st Cir. 2007); *see also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 n. 18 (1977) (noting that "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government").[9]

Significantly, even were Respondent able to show extraordinary circumstances or meaningful evidence of bad faith, such a showing would not defeat governmental deliberative process privilege, which the Commission will vigorously assert. To defeat the privilege, the claimed wrongdoing "must be severe enough to qualify as nefarious or extreme government wrongdoing." *Neighborhood Assistance Corp. of Am., v. United States Dep't of Hous. & Urb. Dev.*, 19 F. Supp. 3d 1, 14 (D.D.C. 2013). The *Neighborhood Assistance* plaintiff, like Respondent here, alleged that a government process (an audit) was politically motivated, and it even had evidence in the form of an email from a senate committee staffer about the audit, immediately after which the audit restarted. *Id.* at 15-16. The court rejected Plaintiff's request to defeat the privilege because the challenged conduct did not "approach[] the type of extreme governmental wrongdoing that would preclude application of the deliberative process privilege." *Id.* at 17-18. Thus, even if

---

[9] If Respondent's standard for authorizing discovery were adopted, the mere fact that a subpoena was issued in support of a Commissioner's Charge would support an argument of improper purpose. All Commissioners are presidential appointees and can be reasonably expected to make public statements about administration priorities. An employer subject to a Commissioner's charge will nearly always be able to assert a colorable claim based on public statements that the initiating Commissioner, a political appointee, is acting for political reasons. The showing to permit discovery of EEOC Commissioners in the context of a subpoena enforcement action in furtherance of the agency's investigation of a Commissioner's charge should be high.

Respondent's conjectures were all true, such conduct would not rise to the level of extreme governmental wrongdoing that would permit Respondent to pierce the privilege. *Cf. Am. Ass'n of Univ. Professors v. Rubio*, 816 F. Supp. 3d 216, 220 (D. Mass. 2026) (determining that misconduct sufficient to negate the privilege had occurred where the court previously found, after a nine-day trial, that government actors had acted in concert to misuse the sweeping powers of their offices to sow fear and unconstitutionally target individuals for deportation based on protected speech).[10]

For these reasons and others, "requests [for discovery into agency motive] are not looked upon favorably." *Comley*, 890 F.2d at 543. The request should be granted only under "extraordinary circumstances," *id.*, which are not present here. For a request such as Respondent's, a request that invades the heart of deliberative decision making and processes at the highest agency level, the "extraordinary circumstances" should be unassailably extraordinary and unique. Respondent has not approached satisfying the extraordinary showing required.[11]

## III. Conclusion

For the reasons above, Respondent's motion for discovery and evidentiary hearing should be denied.

---

[10] The Commission does not concede that this case was correctly decided.

[11] If the Court grants Respondent's motion to any extent, the Commission requests further briefing on the scope and manner of discovery. The Commission reserves its right to assert the governmental deliberative process privilege in response to any particularized discovery requests. *See Scott Paper Co. v. U.S.,* 943 F. Supp. 489, 497 (E.D. Pa. 1996) (describing process of asserting privilege through which agency head "must personally review the materials" and describe the "documents claimed to be privileged."). While it is clear that the discovery topics described by Respondent will implicate the governmental deliberative process privilege, were the Court to allow this discovery – which it should not – the Commission would then need to assert the privilege with respect to specific document requests or deposition questions. Any subsequent evaluation of that privilege by the Court would include evaluation of a declaration by the Chair of the agency.

Dated: November 16, 2026

Respectfully submitted,

*/s/ Rudy Sustaita*
**Rudy L. Sustaita (Tx Bar No. 19523560)**
Regional Attorney
rudy.sustaita@eeoc.gov
(346) 327-7691
1919 Smith St., 6th Floor
Houston, Texas 77002

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of November, 2026, I have submitted the foregoing document with the clerk of court for the District of Massachusetts, using the electronic case filing system of the Court. Counsel hereby certifies that they have served all parties electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

*/s/ Rudy Sustaita*
**Rudy L. Sustaita**